UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| STEPHEN COLACO, et al.,<br><br>            Plaintiffs,<br>    v.<br><br>THE ASIC ADVANTAGE SIMPLIFIED<br>EMPLOYEE PENSION PLAN, et al.,<br><br>            Defendants. | Case No. 5:13-cv-00972-PSG<br><br>**ORDER GRANTING-IN-PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**(Re: Docket Nos. 53, 55)** |

Four years ago, Defendant Microsemi Corporation acquired Defendant ASIC Advantage, Inc. The union of these companies was not without friction, and two aspects of the acquisition gave rise to this suit. First, before the sale, ASIC's board resolved to discontinue making contributions to its Simplified Employee Pension plan, other than for contributions accrued prior to July 1, 2011. Second, Defendants laid off Plaintiffs Stephen Colaco, Tom Gammon, Terry Jones, Quy Lau, David Lichtenstein, Sina Ma, Michael Mullen, Trinh Nguyen, David Robertson, Stephen Thomas, Nhan Tran and Moddy Wong ("Plaintiffs"),[1] and offered them enhanced severance packages if Plaintiffs signed separation agreements releasing any and all claims against Microsemi. The parties now disagree whether the releases freed Defendants of any obligation to pay Plaintiffs their SEP benefits accrued through June 30, 2011, and both sides move for summary judgment on

---

[1] Two Plaintiffs in the suit, Srivalli Chandra and Amaaduddin Quraishi, did not sign severance agreements. *See* Docket No. 62 at 1 n.1.

1

Defendants' affirmative defense of release.[2]  At issue is whether Defendants previously waived this defense by failing to raise it during the administrative process, whether Plaintiffs knowingly and voluntarily released Defendants from any and all claims arising out of their SEP benefits, whether the SEP benefits could not be released because they had vested, and whether the SEP benefits could not be released because they had accrued prior to the date that Plaintiffs were notified of their layoffs.  Because Defendants waived the release as a basis for denying the SEP benefits, but not as an affirmative defense as to this lawsuit, Plaintiffs' motion for summary judgment is GRANTED-IN-PART.  Because both parties present evidence showing genuine issues of material fact as to whether Plaintiffs knowingly and voluntarily executed the releases, whether the SEP benefits had accrued and could not be released, and whether the plain language of the separation agreement includes the SEP benefits, Plaintiffs' motion for summary judgment is DENIED-IN-PART and Defendants' motion for summary judgment is DENIED.

**I.**

ASIC was a California corporation with its principal place of business in Sunnyvale.  ASIC provided a SEP plan for its employees that gave ASIC the discretion to contribute a certain percentage of each employee's compensation toward the employees' retirement savings.[3]  ASIC contributed to the SEP plan through 2009, and as allowed by the Internal Revenue Service, ASIC typically paid SEP contributions late in the year to cover the previous year.[4]  Consistent with this schedule, in November 2010, ASIC paid SEP contributions that employees had earned in 2009.[5]

In the lead up to the Microsemi deal, ASIC's board of directors passed a resolution that terminated the SEP plan as of July 1, 2011.[6]  They resolved that ASIC would "discontinue making

---

[2] *See* Docket Nos. 53, 55.

[3] *See* Docket No. 53 at 1-2.

[4] *See id.* at 2.

[5] *See id.*

[6] *See id.* at 2; Docket No. 54-5.

contributions to the SEP Individual Retirement Account (the **"Freeze"**) as of July 1, 2011 (the **"Freeze Date"**) other than for contributions that have been accrued on behalf of eligible participants in the SEP prior to the Freeze Date."[7] Several Plaintiffs testified at deposition that following the announcement of the acquisition, ASIC's President and Chief Executive Officer and Microsemi HR personnel stated to ASIC employees that their SEP contributions would still be paid for 2010 and the first half of 2011.[8]

After the merger, Microsemi laid off many ASIC employees and offered them a choice between a standard severance package and an enhanced severance package.[9] In order to receive the enhanced severance, the employees had to sign Microsemi's separation agreement, which contained the following terms:

> **2.** *Final Regular Paycheck:* On the date you are notified of your layoff, you will be paid all wages, salary, accrued vacation and other compensation due through your last day worked . . . .
>
> **7.** *No Other Pay or Benefits:* Except as provided in this agreement, you will not be entitled to or eligible for any other forms of compensation or benefits after the day you were relieved of your duties and responsibilities. . . .
>
> **10.** *Final Settlement and Release of All Claims:* Since this package goes beyond what you are entitled to under the Company's policies, you agree that this severance agreement constitutes a full and final settlement of any and all claims, known or unknown, of any kind that you or your spouse or dependents may have to date against the Company or any of its parent or affiliated companies and their officers, directors, shareholders, employees, insurers, agents, successors, or assigns. To the fullest extent allowed by law, you hereby waive and release all such claims in return for the Enhanced Severance Package you will receive if you sign this letter.
>
> **11.** *Claims Included In Release:* The release in Section 10 is intended to be as broad as possible under federal law and the law of the States in which you live or worked during your employment or in which Microsemi has done business. The types of claims that you are releasing under this agreement include but are not limited to the following: . . .

---

[7] *See* Docket No. 54-5.

[8] *See* Docket No. 64-3 at 106-07; Docket No. 64-5 at 80; Docket No. 64-6 at 81-85, 103; Docket No. 64-8 at 90; Docket No. 64-10 at 36-37, 44-45, 79-80.

[9] *See* Docket No. 62 at 2-3, 12.

          d. Claims for unpaid wages and penalties. . . .

          f. This release also includes any unknown claims that you are not aware of at this time.[10]

The twelve Plaintiffs signed separation agreements, and in return they received the enhanced severance.[11]

When Plaintiffs noticed their SEP payments for 2010 and the first half of 2011 had not been made, they contacted a former ASIC board director, ASIC and Microsemi through counsel and in writing requested the payment of the SEP contributions.[12] Microsemi denied their claims on the following grounds: (1) SEP contributions are discretionary, and ASIC's board did not authorize contributions for 2010 or 2011; (2) although ASIC Chairman Pierre Irissou had commented that SEP contributions should be made, he lacked authority to make those comments and later retracted them; and (3) case law states that a fiduciary's oral promises cannot alter a plan's provisions.[13] Plaintiffs appealed, and Microsemi upheld the denial.[14] Although Plaintiffs' initial request explicitly argued that the separation agreements did not bar their claims for the SEP contributions, neither Microsemi's initial denial nor its decision on appeal relied on Plaintiffs' separation agreements as a basis for denial.[15] Plaintiffs subsequently filed this lawsuit, and Defendants raise Plaintiffs' releases as an affirmative defense against all claims.[16]

Plaintiffs now move for partial summary judgment on the affirmative defense of release, arguing that Defendants waived this defense by failing to wield it during the administrative

---

[10] Docket No. 62 at 3-4, 12.

[11] *See* Docket No. 53 at 3.

[12] *See* Docket No. 53 at 4.

[13] *See* Docket No. 54-25.

[14] *See* Docket No. 53 at 4-5.

[15] *See id.*; Docket No. 54-23 at 3; Docket No. 54-25; Docket No. 54-27.

[16] *See* Docket No. 25; Docket No. 26 at ¶ 103.

4
Case No. 5:13-cv-00972-PSG
ORDER GRANTING-IN-PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

process.[17]  Plaintiffs alternatively contend that: they did not knowingly and voluntarily waive their ERISA claims; the SEP benefits could not be released because they vested on June 30, 2011; and the SEP benefits could not be released because Plaintiffs' rights to the benefits accrued before they were notified of their layoffs.[18]

Defendants in their turn also move for summary judgment on the affirmative defense of release, arguing that Plaintiffs knowingly and voluntarily waived all claims against Defendants by signing the separation agreements in exchange for the enhanced severance package.[19]

**II.**

This court has subject matter jurisdiction and supplemental jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.  The parties further consented to the jurisdiction of the undersigned magistrate judge under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 72(a).[20]

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate when "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."  Material facts are those that may affect the outcome of the case.[21]  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party.[22]  All evidence must be viewed in the light most favorable to the non-moving party.  At this stage, a court "does not assess credibility or weigh the evidence, but simply determines whether there is a genuine factual issue for trial."[23]  Initially, the moving party bears the

---

[17] *See* Docket No. 53 at 6.

[18] *See id.* at 6-11.

[19] *See* Docket No. 55 at 7-17.

[20] *See* Docket Nos. 12, 13.

[21] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment.  Factual disputes that are irrelevant or unnecessary will not be counted.").

[22] *See id.*

[23] *House v. Bell*, 547 U.S. 518, 559-60 (2006).

5
Case No. 5:13-cv-00972-PSG
ORDER GRANTING-IN-PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

burden to show that no genuine issue of material fact exists.[24]  If this burden is met, the burden shifts to the non-moving party.[25]

"[A] right to ERISA benefits and a right to bring an ERISA action in federal court are distinct."[26]  29 U.S.C. § 1133 requires ERISA plan administrators to provide "specific reasons" when denying claims.  In the Ninth Circuit, "[a] plan administrator may not fail to give a reason for a benefits denial during the administrative process and then raise that reason for the first time when the denial is challenged in federal court."[27]  This policy is to allow claimants to "prepare adequately for . . . appeal to the federal courts" and prevent them from being "'sandbagged' by a rationale the plan administrator adduces only after the suit has commenced."[28]

Section 1110(a) of ERISA provides that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under [the fiduciary responsibility sections of ERISA] shall be void as against public policy."[29]  However, private releases of ERISA claims nonetheless are valid, so long as they are "knowing and voluntary."[30]  The court must "scrutinize an ostensible [ERISA] waiver with care

---

[24] *See Celotex Corp. v. Caltrett*, 477 U.S. 317, 323-24 (1986).

[25] *See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 630, 630 (9th Cir. 1987).

[26] *Gonda v. The Permanente Med. Grp.*, Inc., No. 11-CV-01363-SC, 2015 WL 678969, at *4 (N.D. Cal. Feb. 17, 2015).

[27] *Harlick v. Blue Shield of California*, 686 F.3d 699, 719 (9th Cir. 2012); *see also Mitchell v. CB Richard Ellis Long Term Disability Plan*, 611 F.3d 119, 199 n.2 (9th Cir. 2012); *Cyr v. Reliance Standard Life Ins. Co.*, 525 F. Supp. 2d 1165, 1177 (2007), *aff'd*, 448 Fed. App'x. 749 (9th Cir. 2011).

[28] *Mitchell*, 611 F.3d 1192, 1199 n.2.

[29] 29 U.S.C. § 1110(a).

[30] *See, e.g.*, *Rombeiro v. Unum Ins. Co. of America*, 761 F. Supp. 2d 862, 868 (N.D. Cal. 2010); *Morais v. Cent. Beverage Corp. Union Emps.' Supplemental Ret. Plan*, 167 F.3d 709, 713 (1st Cir.1999); *Leavitt v. Nw. Bell Tel. Co.*, 921 F.2d 160, 162 (8th Cir.1990); *Finz v. Schlesinger*, 957 F.2d 78, 81–82 (2d Cir.1992); *Dist. 29 United Mine Workers of Am. v. New River Co.*, 842 F.2d 734, 737 (4th Cir.1988); *see also Vizcaino v. Microsoft Corp.*, 120 F.3d 1006, 1012 (9th Cir.1997) (explaining that if the defendant argued that the agreements in the case were waivers of benefits,

in order to ensure that it reflects the purposeful relinquishment of an employee's rights."[31]  Courts in this district[32] have adopted the First Circuit's *Morais* test for determining whether a waiver of ERISA claims is knowing and voluntary.[33]  Under *Morais*, the court must examine the totality of the circumstances, including but not limited to the following six factors: "(1) plaintiff's education and business sophistication; (2) the respective roles of employer and employee in determining the provisions of the waiver; (3) the clarity of the agreement; (4) the time plaintiff had to study the agreement; (5) whether plaintiff had independent advice, such as that of counsel; and (6) the consideration for the waiver."[34]

Regarding the first factor, courts in this district have held that plaintiffs were highly education or sophisticated where they had medical degrees and years in practice as a surgeon,[35] held the position of Senior Director of Business Development and earned an annual salary of over $150,000,[36] were college-educated and had 20 years of employment, including as a company vice president,[37] or had a college degree and 15 years experience as a manager or principle consultant.[38]

---

the court "would have to consider whether the mistaken waiver must and would withstand special scrutiny designed to prevent potential employer or fiduciary abuse").

[31] *Morais v. Central Beverage Corp. Union Employees' Supplemental Retirement Plan*, 167 F.3d 709, 713 (1st Cir. 1999).

[32] *See, e.g.*, *Rombeiro*, 761 F. Supp.2d at 869; *Gonda v. The Permanente Medical Group, Inc.*, No. 11-cv-01363-SC, 2015 WL 678969 (N.D. Cal. Feb. 17, 2015); *Upadhyay v. Aetna Life Insurance Co.*, No. C 13-1368 SI, 2014 WL 186709 at *4 (N.D. Cal. Jan. 16, 2014), *reconsideration denied*, No. C 13-01368 SI, 2014 WL 883456 (N.D. Cal. Mar. 3, 2014) ("*Upadhyay I*"); *Parisi v. Kaiser Foundation Health Plan Long Term Disability Plan*, No. C 06-04359-JSW, 2008 WL 220101 (N.D. Cal. Jan. 25, 2008); *Bennett v. CAN Ins. Companies*, No. C-99-03127-EDL, 2001 WL 30533 (N.D. Cal. Jan. 1, 2001).

[33] *See Morais*, 167 F.3d at 713.

[34] *Id.* at 713 n.6.

[35] *Gonda*, 2015 WL 678969 at *5.

[36] *Upadhyay I*, 2014 WL 186709 at *4.

[37] *See Bennett*, 2001 WL 30533 at *5.

[38] *Parisi*, 2008 WL 220101 at *4.

7

Case No. 5:13-cv-00972-PSG
ORDER GRANTING-IN-PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

However, a court also implied that an individual's career background was not determinative as to this factor, when it held that it lacked sufficient evidence of a plaintiff's education or business sophistication to determine "whether he should have been expected to understand . . . the legalistic language of a contract or know to seek advice from counsel," notwithstanding the plaintiff's career in high precision fabrication, electronic systems and computer systems.[39]

The second factor examines the roles of the employer and employee in determining the provisions of the waiver. Courts in this district have not dwelt on this factor.[40] In *Rombeiro*, the court found that this factor tipped in favor of finding that a release was not knowing and voluntary where the release was "a contract of adhesion, a take-it-or-leave-it proposition."[41] In that case, there were "no negotiations . . . regarding the terms of the Release Agreement. If a [plaintiff] elected to receive benefits from the . . . Severance Plan he or she was required to execute the Release Agreement."[42] In *Upadhyay I*, on the other hand, the court found that a release was knowing and voluntary where the plaintiff "was able to expressly carve out certain claims from the release."[43] Similarly, in *Bennett*, the court found it significant that the settlement agreement was "specifically tailored to [plaintiff's] situation, in contrast, for example, to a standard severance package offered on a 'take it or leave it' basis to multiple employees in a lay-off."[44]

The third factor looks to the clarity of the agreement, and whether the language is clear and unambiguous. Courts in this district have found this factor highly significant, and have found that releases were knowing and voluntary where the contracts specifically stated that they applied to

---

[39] *Rombeiro*, 761 F. Supp. 2d at 870.

[40] *See, e.g.*, *Gonda*, 2015 WL 678969 at *5 (discussing knowing and voluntary inquiry but not examining the second factor); *Parisi*, 2008 WL 220101 at *4 (same).

[41] *Rombeiro*, 761 F. Supp. 2d at 870.

[42] *Id.*

[43] *Upadhyay I*, 2014 WL 186709 at *4.

[44] *Bennett*, 2001 WL 30533 at *5.

8

Case No. 5:13-cv-00972-PSG
ORDER GRANTING-IN-PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

employee benefit plans[45] and ERISA claims.[46]  Courts also have found that where a release expressly exempts certain claims from being waived but not others, that is a clear indication that the parties knew and intended to waive all non-exempted claims.[47]

The fourth factor is the time that the plaintiffs had to study the agreement, and courts have looked to the plain language of the agreement.  Courts have found that 21 days was sufficient,[48] particularly when the 21-day period is followed by a seven-day window for revocation.[49]

The fifth factor looks to whether the plaintiff had independent advice, such as that of counsel.  Courts in this district have considered whether the plaintiff was represented by counsel,[50] whether the contract states that the plaintiff was advised to consult an attorney, and whether the plaintiff actually did.[51]

---

[45] *See Upadhyay I*, 2014 WL 186709 at *4.

[46] *See Upadhyay I*, 2014 WL 186709 at *4; *Gonda*, 2015 WL 678969 at *5.

[47] *Compare Bennett*, 2001 WL 30533 at *5 ("The exclusion of pension benefits demonstrates that the parties did not regard employee benefits as being outside the scope of the Settlement unless expressly excluded.  Thus, the parties knew that other employee benefits would be released by the Settlement."); *Gonda*, 2015 WL 678969 at *5 ("[The Settlement Agreement] exempted certain benefits and claims . . . but did not exempt any ERISA claims.  That is powerful evidence that the parties *did* intend to release all of Dr. Gonda's ERISA claims.") (internal citations omitted); *with Rombeiro*, 761 F. Supp. 2d at 869 ("[The agreement] does not exclude any claims or benefits from the release, which would have indicated . . . That all non-excluded claims or benefits were in fact included.").

[48] *See Gonda*, 2015 WL 678969 at *5.

[49] *See Parisi*, 2008 WL 220101 at *4.

[50] *See Bennett*, 2001 WL 30533 at *5.

[51] *Compare Gonda*, 2015 WL 678969 at *5 (finding a contract knowing and voluntary where the language states that the party was advised in writing to consult an attorney, and the party was represented by counsel, who explained the separation agreement); *Upadhyay I*, 2014 WL 186709 at *4 (settlement agreement stated that plaintiff had consulted with her attorney); *Parisi*, 2008 WL 220101 at *4 (plaintiff was advised to consult with an attorney before signing); *with Rombeiro*, 761 F. Supp. 2d at 869-70 (finding a waiver not knowing and voluntary based on the totality of the circumstances, including that while the contract stated that plaintiff could have consulted an attorney, there was no evidence that plaintiff's counsel was ever made aware of or asked to become involved in the negotiations around the release).

The sixth and final factor is whether there was consideration for the waiver. Courts in this district have held that this factor was satisfied where the consideration entailed compensation for the plaintiff's losses, injuries, legal and medical expenses;[52] $300,000;[53] or a sum "somewhere in the six-figure range."[54]

## III.

Applying these standards to the release and the evidence in the record, there is no doubt that a reasonable jury could find in either party's favor.

*First*, as to whether Defendants waived their ability to assert the affirmative defense of release, the court notes that much of the parties' confusion stems from the use of "release" and "waiver" in multiple, related contexts. First, there is the issue of whether Defendants may assert the separation agreement as a basis for their initial denial of Plaintiffs' ERISA claims, and second, there is the issue of whether Defendants may assert the separation agreement as a defense against this lawsuit.

As to the first issue, Plaintiffs are correct that because Defendants did not rely on the separation agreements as a reason for denying the ERISA claims during the administrative process, Defendants waived that argument and cannot wield it now. Defendants were on notice of the separation agreements, particularly given that Plaintiffs argued that the separation agreements did not bar their claims in their initial letter to Defendants. Because Defendants did not base their denials of Plaintiffs' SEP benefits claim on the release during the administrative process, Defendants may not raise the release as a reason for denying the benefits now that they are in federal court.[55]

---

[52] *See Gonda*, 2015 WL 678969 at *5.

[53] *Upadhyay I*, 2014 WL 186709 at *4.

[54] *Parisi*, 2008 WL 220101 at *4.

[55] *See* Docket No. 54-25; Docket No. 54-27.

10
Case No. 5:13-cv-00972-PSG
ORDER GRANTING-IN-PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

As to the second issue, Defendants' failure to assert the release during the administrative process does not bar them from arguing that the release applies to Plaintiffs' suit as a whole. "It is important to recognize that although the release could have served as a basis for denying benefits during the administrative process, the release is also a defense to the present ERISA action itself."[56] While Defendants are precluded from arguing in this court that the releases are a basis for denying Plaintiffs' request for benefits, they may still argue that the release bars this lawsuit.

***Second***, there are triable issues of fact as to whether Plaintiffs knowingly and voluntarily released their ERISA claims. *Morais* established a non-exclusive, six-factor test for determining whether an ERISA waiver was knowing and voluntary, and while Defendants present compelling evidence as to some of the factors, Plaintiffs also present evidence that could lead a reasonable jury to find that Plaintiffs did not knowingly and voluntarily waive their ERISA claims.

The first *Morais* factor considers the Plaintiffs' education and business sophistication. This is a fact-intensive inquiry: while courts in this district have found parties sufficiently educated and sophisticated to grant summary judgment on the knowing and voluntary inquiry, no bright line rule has been established as to what amount of education or career experience suffices.[57] Here, the parties present conflicting evidence as to whether the Plaintiffs are educated and sophisticated enough to have voluntarily waived their ERISA claims. While Defendants argue that 11 of the 12 Plaintiffs are sophisticated individuals with college education and business experience in executive,

---

[56] *Upadhyay I*, 2014 WL 186709 at *2 (N.D. Cal. Jan. 16, 2014). Plaintiffs argue that Defendants' reliance on *Upadhyay* is misplaced, stating that *Upadhyay* was about whether a claim administrator's letter advising Upadhyay of her right to bring a civil action constituted a waiver of Aetna Life Insurance's right to assert affirmative defenses in the lawsuit that Upadhyay subsequently brought. *See* Docket No. 79 at 3. However, there appears to have been an unfortunate mix-up due to Plaintiffs' use of Lexis and Defendants' use of Westlaw. Defendants rely on *Upadhyay I*, 2014 WL 186709, which held that Upadhyay had waived her right to bring an ERISA action in federal court by signing a settlement agreement. 2014 WL 186709 at *2. Plaintiffs' reply discusses *Upadhyay v. Aetna Life Ins. Co.*, No. C 13–01368 SI, 2014 U.S. Dist. LEXIS 27675, 2014 WL 883456 (N.D. Cal. Mar. 3, 2014) ("*Upadhyay II*"), which Plaintiff rightly notes does not apply here, but addressed different issues than *Upadhyay I*, which does apply.

[57] *See supra* Part III.

11

Case No. 5:13-cv-00972-PSG
ORDER GRANTING-IN-PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

management, or other skilled positions,[58] Plaintiffs point out that only seven of them have college degrees.[59]

A number of the Plaintiffs have as much education and work experience as the plaintiffs in *Upadhyay I* and *Parisi*, which both held that the plaintiffs had knowingly and voluntarily waived their ERISA claims.[60] Specifically, Colaco has an electronics and radio engineering diploma and 30 years of business experience, and was ASIC's Chief Technology Officer for about a year.[61] Gammon, ASIC's former Vice President of Sales,[62] has a bachelor's degree in history and a master's degree in philosophy of religion and over 30 years of work experience.[63] Lau has a bachelor's degree and over 20 years of work experience, and was an accounts specialist at ASIC.[64] Lichtenstein, formerly a Quality Assurance Manager at ASIC,[65] has a bachelor's degree in engineering, a master's degree in management, and over 30 years of work experience.[66] Robertson has a bachelor's degree and was a Facilities Support Technician and manufacturing software support specialist at ASIC.[67] Thomas, formerly a Senior Process Quality Engineer at ASIC,[68] has a bachelor's degree and a master's degree, professional certifications as a quality auditor and

---

[58] *See* Docket No. 55 at 13.

[59] *See* Docket No. 63 at 16.

[60] *See Parisi*, 2008 WL 220101 at *4 ("the undisputed facts . . . indicate that plaintiff has a college degree as well as 15 years experience as a manager or principal consultant").

[61] *See* Docket No. 56-20 at 11:20-12:4, 15:7-25:25; Docket No. 56-21 at 26:1-30:5, 35:16-23.

[62] *See* Docket No. 56-23 at 37:7-12.

[63] *See* Docket No. 56-22 at 11:11-25, 13:16-14:1.

[64] *See* Docket No. 56-19 at 13:5-12, 22:11-28:11, 59:4-12.

[65] *See* Docket No. 56-16 at 53:22-24.

[66] *See* Docket No. 56-15 at 11:25-12:7, 12:21-13:8, 14:12-17:23, 20:12-21:25; Docket No. 56-16 at 22:1-31:17.

[67] *See* Docket No. 56-14 at 8:25-9:5, 19:2-10, 31:10-32:16.

[68] *See* Docket No. 56-18 at 40:24-41:4.

technician, and over 20 years of work experience.[69] Wong has a bachelor's degree in business administration and over 15 years of business experience, including in human resources.[70]

In contrast, while Jones has over 15 years of work experience in the semiconductor industry, filed two patent applications for guitar strings, and was ASIC's Production Control and Purchasing Manager,[71] he did not graduate from college.[72] Ma was a receptionist, officer manager, and a buyer/planner at ASIC,[73] has about a year of college education,[74] and never received a college degree or certificate.[75] Mullen, ASIC's former Vice President of Manufacturing,[76] has an associate's degree in electronics technology but over 40 years of work experience.[77] Tran was a test technician at ASIC[78] and did not graduate from high school, does not have a GED, and attended college but did not obtain an associate's degree.[79] Nguyen has never attended any college.[80]

The second factor examines the roles of the employer and employee in determining the provisions of the waiver. Plaintiffs had no role in drafting the agreement, which was drafted by

---

[69] *See* Docket No. 56-17 at 12:24-13:5, 14:8-11, 20:6-26:25; Docket No. 56-18 at 27:1-28:1.

[70] *See* Docket No. 56-26 at 13:15-22, 14:9-21:25; Docket No. 56-27 at 22:1-23:16.

[71] *See* Docket No. 56-31 at 12:10-20; Docket No. 56-32 at 28:19-25, 33:4-14.

[72] *See* Docket No. 64-4 at 11:6-15.

[73] *See* Docket No. 56-28 at 28:3-18.

[74] *See* Docket No. 64-7 at 12:23-13:19.

[75] *See id.* at 11:19-21, 12:8-10.

[76] *See* Docket No. 56-25 at 43:23-44:22.

[77] *See* Docket No. 56-24 at 9:2-6, 14:2-20:25; Docket No. 56-25 at 21:1-24:13.

[78] *See* Docket No. 56-29 at 17:23-18:5.

[79] *See* Docket No. 64-12 at 9:4-5, 9:16-18, 10:1-18.

[80] *See* Docket No. 64-9 at 11:22-12:2.

13
Case No. 5:13-cv-00972-PSG
ORDER GRANTING-IN-PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND
DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Microsemi.[81]  Unlike the "take-it-or-leave-it" contract in *Rombeiro*, Plaintiffs had the option of receiving Microsemi's Standard Severance Package even if they did not sign the separation agreement.[82]  In order to receive the Enhanced Severance Package, however, Plaintiffs had to agree to the terms of the separation agreement,[83] which left no opportunity for the specific tailoring that the court found significant in *Bennett*[84] and *Upadhyay I*.[85]

Regarding the third factor, there are triable issues of fact as to whether the language of the agreement is clear and unambiguous.  As Defendants point out, the separation agreement specifically exempts some claims, which indicates that the parties knew and intended that all other claims were not exempted from the agreement's waiver.[86]  However, the separation agreement does not explicitly mention ERISA claims or pension benefits, and does not name ASIC or the SEP Plan as parties to the release.  Additionally, as discussed further below, while Paragraph Seven clearly states that Plaintiffs are ineligible for compensation or benefits after their dates of termination, it is unclear whether that language applies to SEP benefits that were accrued prior to the Plaintiffs' dates of termination.[87]

As to the fourth factor, Plaintiffs had sufficient time to review the separation agreement.  The separation agreement states that Plaintiffs had a period of 45 days to review the agreement, and another seven days after signing for revocation.[88]  While individual Plaintiffs testified that they

---

[81] *See* Docket No. 55 at 17; Docket No. 63 at 17.

[82] *See Rombeiro*, 761 F. Supp. 2d at 870; *see, e.g.*, Docket Nos. 56-1-56-13.

[83] *See* Docket Nos. 56-1-56-13.

[84] *See Bennett*, 2001 WL 30533 at *5.

[85] *See Upadhyay I*, 2014 WL 186709 at *4.

[86] *See* Docket Nos. 56-1-56-13 at ¶ 12.

[87] *See* Docket Nos. 56-1-56-13 at ¶ 7 ("Except as provided in this agreement, you will not be entitled to or eligible for any other forms of compensation or benefits after the day you were relieved of your duties and responsibilities.").

[88] *See* Docket Nos. 56-1-56-13 at ¶ 18.

14
Case No. 5:13-cv-00972-PSG
ORDER GRANTING-IN-PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

did not have sufficient time to review the agreement,[89] or that they did not understand they had the opportunity to review the agreement before signing it,[90] the plain language of the agreement provided sufficient time.

The fifth factor asks whether the Plaintiffs had independent advice, such as that of counsel. Under the precedents of this district, a reasonable jury could find that this factor tips toward either Plaintiffs or Defendants. In favor of Defendants, the separation agreement's introductory section "encourage[s] [Plaintiffs] to discuss this letter with [a] spouse, attorney, and tax advisors."[91] However, there is no indication that any of the Plaintiffs were represented by counsel in their meetings with Microsemi regarding the separation agreement, or that any Plaintiff actually consulted an attorney.[92] Defendants argue that the opportunity to consult with counsel is sufficient,[93] but the precedents of this district are not so clear on this point as Defendants suggest.[94]

Regarding the sixth factor of consideration, it is undisputed that Plaintiffs received the enhanced severance package in exchange for signing the separation agreements.[95] Plaintiffs argue that the enhanced severance pay was less than the SEP contributions owed to them, making the consideration inadequate.[96] However, it is a canon of contract interpretation that courts shall not inquire into the adequacy of consideration, so long as it is more than nominal.[97]

---

[89] *See* 56-32 at 61:22-63:24.

[90] Docket No. 64-9 at 29:2-11.

[91] Docket Nos. 56-1-56-13.

[92] *See* Docket No. 63 at 17.

[93] *See* Docket No. 78 at 9.

[94] *See supra* note 51.

[95] *See* Docket No. 55 at 12.

[96] *See* Docket No. 63 at 15.

[97] Restatement (Second) of Contracts, § 79.

The knowing and voluntary inquiry looks at the "totality of the circumstances,"[98] suggesting that no one of the six factors is dispositive. The evidence presented by the parties shows that a reasonable juror could find that Plaintiffs did not knowingly and voluntarily release their ERISA claims against Defendants. While some Plaintiffs have a great deal of education and work experience, others do not. None of the Plaintiffs had a role in determining the provisions of the waiver. The clarity and unambiguity of Paragraph Seven is unclear, and while the separation agreement expressly exempted some claims, it does not mention ERISA claims or name ASIC and the SEP Plan as parties to the agreement. Plaintiffs had adequate time to study the agreement, as stated in the contracts. While the separation agreements encouraged Plaintiffs to seek the advice of counsel, none of the Plaintiffs were represented during their severance meetings and none sought out legal advice. Plaintiffs received adequate consideration for the separation agreements. In short, some factors, such as the amount of time Plaintiffs had to review the agreement and consideration, favor Defendants. Other factors favor Plaintiffs, such as Defendants' role in determining the waiver provisions and the clarity of the agreement. Still others are ambiguous, such as Plaintiffs' education and business sophistication and whether Plaintiffs had independent advice. Based on these facts, summary judgment on the issue of whether Plaintiffs knowingly and voluntarily waived their ERISA claims is inappropriate.

***Third***, there is a genuine issue of material fact as to whether Plaintiffs' SEP benefits had vested before they signed the separation agreements, and therefore could not be released. At issue are the meaning and significance of the ASIC Board's June 30, 2011 resolution,[99] ASIC's listing of the SEP Plan benefit accruals on its balance sheets,[100] and statements by ASIC management and directors and Microsemi's HR personnel that SEP contributions would be paid through June 30,

---

[98] *Rombeiro*, 761 F. Supp. 2d at 869.

[99] *See* Docket No. 54-5.

[100] *See* Docket No. 54-6 at DEFS 00333; Docket No. 54-20; Docket No. 54-21 at DEFS 00497 (listing individual ASIC employees' accruals).

2011.[101] The board resolution states that the Board "shall discontinue making contributions . . . as of July 1, 2011 other than for contributions that have been accrued on behalf of eligible participants in the SEP prior to the Freeze Date."[102]

Defendants point out that the terms of the SEP Plan state that contributions are discretionary[103] and argues that that the board resolution permits ASIC to make an SEP contribution after the July 1, 2011 Freeze Date, but imposes no obligation for it to do so.[104] Plaintiffs argue that the board resolution means that ASIC would not make contributions after July 1, 2011, except for contributions accrued prior to that date. That is, the resolution created an obligation to pay previously-accrued contributions. In support of their interpretation, Plaintiffs present communications from ASIC's management and directors. Five days after the board resolution, ASIC CEO Bertrand Irissou stated in an email that "the intent" was that "[t]he SEP IRA was accrued for FY 2011 and shown on our balance sheet –You should get the 2010 payment in October 2011 . . . . The 2011 payment (1/2 year) should be in 2012."[105] Defendants argue that at that time, ASIC management lacked the authority to make any statements, because the merger had concluded. However, Irissou's statement describes the Board's intent at the time of their resolution, which predated the union of ASIC and Microsemi. Based on these facts, the meaning of the board resolution is not so clear as any of the parties would like, and a reasonable jury could find either interpretation compelling.

Further muddying the waters as to whether the benefits had vested or accrued, Plaintiffs present evidence that ASIC considered the SEP benefits accrued, including a balance sheet listing

---

[101] *See* Docket No. 54-7; Docket No. 64-3 at 106-07; Docket No. 64-5 at 80; Docket No. 64-6 at 81-85, 103; Docket No. 64-8 at 90; Docket No. 64-10 at 36-37, 44-45, 79-80.

[102] Docket No. 54-5.

[103] *See* Docket No. 54-1 at DEFS 00318.

[104] *See* Docket No. 62 at 14.

[105] Docket No. 64-1.

17
Case No. 5:13-cv-00972-PSG
ORDER GRANTING-IN-PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

the 2010 and 2011 SEP benefits as "accrued" liabilities[106] and a September 2011 email stating that the SEP benefits needed to be distributed for tax purposes.[107] Defendants, however, argue that the term "accrued" as used in a company's balance sheets "cannot reasonably be interpreted synonymously with the ERISA definition of an 'accrued benefit,'"[108] because the term "accrued benefit" has a specialized meaning under ERISA.[109] Defendants rely on *Kalda*, but the reference is not apt. In *Kalda*, the company had explicitly resolved not to make retirement contributions, and maintained balance sheets tracking what the contributions would have been only in the hopes of one day being able to make payments.[110] Here, the very issue in dispute is whether ASIC's Board had resolved whether to make contributions; if they had explicitly decided not to, as in *Kalda*, then this case would be much simpler.

Given that the available evidence is capable of leading a reasonable jury to find either that the benefits had or had not vested, there is a triable issue of fact.

***Fourth***, there is a genuine issue of material fact as to whether the scope of the separation agreements encompassed the SEP benefits. The parties rely on the same paragraph—the same phrase, no less—of the separation agreement to support their positions.[111] Paragraph Seven provides that Plaintiffs "will not be entitled to or eligible for any other forms of compensation or benefits after the day you were relieved of your duties and responsibilities."[112] Defendants additionally rely on Paragraph Two, which states, "On the date you are notified of your layoff, you

---

[106] *See* Docket No. 54-6 at DEFS 00333.

[107] *See* Docket No. 54-20.

[108] *Kalda v. Sioux Valley Physician Partners, Inc.*, 481 F.3d 639, 648 (8th Cir. 2007).

[109] *See* 29 U.S.C. § 1002(23)(B) (defining an accrued benefit "in the case of a plan which is an individual account plan, the balance of the individual's account"); Docket No. 62 at 14-16.

[110] *See Kalda*, 481 F.3d at 642.

[111] *See* Docket No. 53 at 9; Docket No. 62 at 12.

[112] Docket Nos. 56-1-56-13 at ¶ 7.

18
Case No. 5:13-cv-00972-PSG
ORDER GRANTING-IN-PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

will be paid all wages, salary, accrued vacation and other compensation due through your last day worked."[113]  Defendants argue that Paragraphs Seven and Two together show that Plaintiffs were not entitled to any compensation after their termination dates, other than what was provided for in the separation agreement.[114]  Plaintiffs do not disagree with that interpretation of the separation agreement.  They argue, however, that the SEP benefits had been earned prior to Plaintiffs' termination dates, and so the benefits were not released by Paragraph Seven.[115]  In this view, the benefits were part of the compensation due through Plaintiffs' last day of work.  Because this issue ultimately depends on whether the benefits were accrued and owed, it also is a triable issue of fact for the reasons provided above.

## IV.

Plaintiffs' motion for partial summary judgment is GRANTED-IN-PART and DENIED-IN-PART.  Defendants may not argue that the separation agreements are a basis for denying Plaintiffs' right to SEP benefits, but they may argue that the separation agreements bar this lawsuit.  Defendants' motion for summary judgment is DENIED.

**SO ORDERED.**

Dated:  September 24, 2015

_____
PAUL S. GREWAL
United States Magistrate Judge

---

[113] Docket Nos. 56-1-56-13 at ¶ 2.

[114] *See* Docket No. 62 at 13.

[115] *See* Docket No. 53 at 9.

19
Case No. 5:13-cv-00972-PSG
ORDER GRANTING-IN-PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT